Benjamin G. Kilpatrick, Plaintiff, v. Walter O. Anthony et al., Appellees, Ethel Dess, Appellant. Robert C. Fenner et al., Cross Appellants. J. Kehres and Ethel Dess, Cross Appellees.

Gen. No. 39,825.

Opinion filed May 11, 1938.

CARL POMERANCE, of Chicago, for appellant Ethel Dess.

KIRKLAND, FLEMING, GREEN, MARTIN & ELLIS, of Chicago, for certain appellants.

CARL POMERANCE, of Chicago, for appellees J. Kehres and Ethel Dess.

MR. JUSTICE DENIS E. SULLIVAN delivered the opinion of the court.

Ethel Dess, one of the interveners, brings this appeal from a decree entered in the circuit court confirming the master's report of sale of certain real estate located in Chicago, Illinois, and approving proposed distributions of proceeds of sale, including a plan of reorganization.

The facts presented for our consideration are as follows:

Benjamin Kilpatrick as successor trustee and plaintiff filed his bill on June 28, 1931, to foreclose the lien

of the trust deed executed by Walter O. Anthony and Estelle Anthony, his wife, securing an indebtedness of $82,500. The property is known as the Prairie Avenue Apartments, 6817–21 South Prairie avenue, Chicago, Illinois.

On November 12, 1932, an amended and supplemental bill of foreclosure was filed and a decree of foreclosure was entered in this cause on August 28, 1935. Subsequently on March 31, 1937, the premises were sold by a master in chancery in accordance with the decree of foreclosure for the price of $59,900, and on April 13, 1937, leave having been given, J. Kehres and Ethel Dess filed their appearance and intervening petition setting forth that they were the owners of bonds in the sum of $2,200 as evidenced by certificates of deposit, and their objections to the master's report of sale and distribution.

After said objections were filed the bondholders' committee filed its appearance and its intervening petition seeking to have its plan of reorganization approved, and to confirm the sale under the foreclosure decree, and also approve the plan. The case was heard by the chancellor upon the intervening petition of the committee, its plan, the report of sale, and the objections of the objecting defendants to the plan of reorganization and to the foreclosure sale. On June 19, 1937, the court overruled all objections, and approved the sale and plan, with slight modifications, but allowed J. Kehres, one of the objecting interveners, to withdraw his bonds, but Ethel Dess, the other dissenter, was not permitted to withdraw her bonds from the depository. Under the terms of the decree approving the report of sale and distribution, the sale price of $59,900 was confirmed but nondepositing bondholders were to receive only their proportionate share of $35,750, which is termed the "true value price."

There is no issue as to the pleadings.

Appellant's theory is that the court has jurisdiction over the bondholders' committee, the plan of reorganization, and the acts of the bondholders' committee in relation thereto, and since both dissenting bondholders made the necessary and proper tenders and gave the necessary notice to the proper parties required by the plan of reorganization, that equity will often relax rigid requirements of time and form and only require substantial compliance, and further contending that since the court did allow the withdrawal of one dissenter's (J. Kehres) bond, no evidence having been introduced or offered to substantiate the refusal of the withdrawal of the other dissenter's (Dess) bond, the court should have ordered the withdrawal of the appellant's bond; that the deposit agreement is a unilateral contract which lacks mutuality, and whether or not the deposit agreement and plan of reorganization was void or voidable is of no importance, as the appellant rescinded the contract and it was the duty of the court to declare the contract void and direct the return of the bonds.

Further, appellant contends that the decree of June 19, 1937 approved the sale price of $59,900, but ordered distribution to nondepositing bondholders on the basis of the "true market price," fixed at $35,750, thus establishing two separate prices, which the appellant further contends is contrary to law; that further, the reorganization committee did not comply with its duties and obligations as a fiduciary and that, therefore, the court should have refused to confirm the bid and should have ordered the withdrawal of the appellant's bonds. Appellant asks that the decree of June 19, 1937, be reversed and remanded.

The theory of the appellees and cross appellants is that the chancellor has no authority or discretion to alter or modify the contractual rights existent among

the depositing bondholders *inter sese* and between such depositing bondholders and the committee; that the chancellor has the equitable discretion, in connection with the foreclosure of a mortgage or trust deed which secures interests not all held by the same person, to distinguish between the price bid at the foreclosure sale and the fair cash market value of the property; that the former figure to govern the rights as among the mortgage bondholders, taken as a class, and all other parties, and the latter figure to form the basis of distribution as among the nondepositing mortgage bondholders.

Appellees rely upon the following errors for reversal on the cross-appeal, namely, that the chancellor exceeded his authority when he altered the contract existent between cross appellant and its depositors by ordering the withdrawal of cross appellee's bonds and by reducing the fees and expenses of cross appellant.

It appears from the evidence presented in this case that the property was bid in at the master's sale by John T. Pain, representing the bondholders' committee, for the sum of $59,900; that upon this master's report coming before the court it entered a decree confirming the master's report of sale and approving the distribution of the proceeds of sale and entered a deficiency decree and approved the plan of reorganization which provided, among other things, that the intervening petitioner Kehres be permitted to withdraw his bonds amounting to $200 and become entitled to his so-called "full pro rata share" of the full cash market value of the property; that the other intervening petitioner Ethel Dess was not an original purchaser but acquired the certificate of deposit representing the bonds held by her on what the trial court called a speculative basis and she was not permitted to withdraw her bonds amounting to $2,000 from the depository.

When intervening petitioners filed their objections to the master's report they claimed that the price of $59,900 was too high. Said objection was apparently sustained by the court for it announced that the distribution would be on the basis of the "fair cash market value" of the property and that it would be necessary to take proof to establish that basis. Thereafter the court permitted the intervener J. Kehres as heretofore stated to withdraw his bonds of $200 face value from the depository and from the protective committee. The court having granted J. Kehres request to withdraw his bonds, he does not complain in this court. We do not believe cross appellants' complaint of the court's action in this regard is justified. As to the $2,000 in bonds of Ethel Dess, the evidence in the record shows that there is some question as to whether or not she was the rightful owner or assignee of the certificate of deposit which was presented to the court as the basis of her claim. The court instructed counsel representing Ethel Dess to bring in further evidence to show who was the real owner of the bonds, but according to the record that was not done. We do not think the court erred in refusing to permit Ethel Dess to withdraw the bonds amounting to $2,000 face value.

As was said in the case of *First Nat. Bank v. Bryn Mawr Beach Bldg. Corp.*, 365 Ill. 409, 426: "The court is concerned with the fairness of the bid as to those bondholders who have not adopted the plan. In this it must be borne in mind, however, that non-depositing bondholders are not to be aided in an effort to create a maneuvering value for their bonds or give them a nuisance value by attempting to obstruct re-organization."

It is next contended that the bonds held by the receiver of the bank were of the approximate value of $19,000 which should be subordinate to the other bonds

under the said mortgage for the reason claimed that the money in the bank of issue was used for the purpose of buying these bonds. We fail to find any evidence of such use. In addition thereto it is noted that one of the provisions of the trust deed which was merged in the decree of foreclosure of August 28, 1935, provided:

"All of the bonds herein described are equally in all things secured by the said Trust Deed, without any preference or priority whatsoever of the lien thereof in favor of any one or more of said bonds over any one or more of the others."

This finding was made in the original decree of foreclosure dated August 28, 1935, and no appeal having been taken from that decree it is final and it is too late for the intervener to make complaint thereof at this time.

At the time the court approved the master's report and the plan of reorganization, it modified the fees in connection with such plan to read as follows:

Committee fee reduced from $1,568 to $750;

Share of General Committee expense allowable to this issue reduced from $813.99 to $50;

Depository fee of Reliance Bank and Trust Company reduced from $295.50 to $100; and

Fees of First National Bank of Chicago reduced from $591 to $200.

Complaint is made on the cross-appeal here that the adjustments of the fees and costs contained in said plan of reorganization as adjusted by the court are in violation of the contract between the depository and the depositing bondholders. When a bondholders' committee applies to a court of equity for the approval of their plan of reorganization, they come into court seeking equity and must show that they have a plan that is fair and equitable to all parties concerned. Such bondholders' committee would be estopped to in-

voke a rule of law that the court has no power to change or adjust and supervise the costs and fees because in doing so the court would violate a contract made with the depositors by said committee for the amount of such fees. A court of equity must necessarily, and especially in cases of this kind, have wide discretionary powers in the matter of fees and costs, and to say that the court could have jurisdiction in a matter of this kind for one purpose and not for all purposes, would prevent the court from making the necessary equitable adjustments between the various parties and their interests and if such restriction were upheld, it might and would no doubt in many instances prevent the administration of complete justice between all the parties. The court necessarily has full power in supervising the plan of reorganization and to do whatever in the exercise of reasonable discretion as may be necessary in its judgment in order that the plan of reorganization, as so corrected, may be fair to all parties in interest.

As the court said in *First Nat. Bank v. Bryn Mawr Beach Bldg. Corp.*, 365 Ill. 409, at page 419: "It may be further observed that an attempt to carry out a bondholders' plan of re-organization without the approval and supervision of a court of equity would be attended with so many dangers and uncertainties that few bondholders would be willing to enter the arrangement, though convinced that, properly supervised, the plan would retrieve for them the greatest possible percentage of their investment. Certainly, to secure such percentage to the mortgagee bondholders cannot be said to be outside the scope of equity jurisdiction."

We cannot say from the record before us that the court's adjustment and allowance of fees for appellee is inequitable or erroneous.

Complaint is also made on the cross-appeal that the court erred in permitting Kehres to withdraw his bond.

As Kehres did not appeal from the court's order and is not before this court at this time, so-called cross errors cannot be assigned as to him.

Objection is also made to the approval of the bondholders' plan of reorganization *in toto*. We think paragraphs one and two of such plan of reorganization proposed and the court was advised that the representative of the bondholders' committee intended going before the master at the time of sale and bid the lowest price, etc. This recitation of their activities and purposes could well have been left out of said proposed plan as given to the court, as the proper time to ask the court's supervision of a plan is after the sale, at the time the court is asked to approve such master's sale, when it may consider the whole matter including the proposed plan of reorganization. Evidently the approval by the court of paragraphs one and two was not necessary, but was not harmful to intervener-appellant.

From a review of the entire record and having in mind the necessarily wide discretion a court must have in adjusting the interests involved when considering plans of reorganization, we cannot say that the trial court did any substantial injustice to anyone which should be corrected. For that and other reasons herein expressed, the decree of the circuit court is hereby affirmed.

*Decree affirmed.*

HEBEL, P. J., and HALL, J., concur.